AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: ___EMJ 5/13/2024___

5/13/24
a mg

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>ELECTRONIC DEVICE: an Omen laptop, serial number<br>CND3171HXY, seized from CHRISTOPHER BUXTON | )<br>)<br>)<br>)<br>)<br>)    Case No. MJ-24- 428-AMG |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is attached and incorporated by reference herein.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2252A(a)(5)(B) | Possession of Materials Containing Child Pornography |

The application is based on these facts:

See the attached Affidavit of FBI Special Agent Steven Carrick, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 USC § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steven Carrick, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __5/13/24__

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma    AMANDA MAXFIELD GREEN, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Steven Carrick, a Special Agent of the Federal Bureau of Investigation ("FBI"), Oklahoma City Division, being duly sworn, state:

## INTRODUCTION

1.    I am submitting this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic device: an **Omen laptop, serial number CND3171HXY** seized from **CHRISTOPHER BUXTON** (hereinafter the "**TARGET DEVICE**"), as further described in Attachment A of this Affidavit, which is incorporated into this Affidavit by reference. The FBI in Oklahoma City has custody of the **TARGET DEVICE** in Oklahoma City, Oklahoma. I am submitting this Affidavit in support of a search warrant authorizing a search of the **TARGET DEVICE** for the items specified in Attachment B of this Affidavit, wherever they may be found, and the extraction from that property of electronically stored information, as further described in Attachment B of this Affidavit, as instrumentalities, fruits, and evidence of the subsequently-mentioned crimes.

2.    I have been employed as a Special Agent with the FBI since February 2022 and have been assigned to the Oklahoma City Division of the FBI since June 2022. I completed four months of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills,

forensic techniques, and a variety of other subjects.  As a federal agent, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.  Prior to my employment with the FBI, I was a Police Officer in Nashville, Tennessee for nine years.  I spent four of those years investigating crimes against children, to include physical abuse, sexual abuse, and homicide.

      3.      The facts set forth in this Affidavit are based upon my personal observations, my training and experience, reports provided to me by other law enforcement officers, and statements made by witnesses and other concerned parties.  Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included each and every fact known to me concerning this investigation.  Based on the facts set forth in this Affidavit, I assert there is probable cause to believe that contraband and evidence of a crime, fruits of a crime, and instrumentalities of violations of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (distribution and/or receipt of a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (possession of and access with intent to view a visual depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) (distribution and/or receipt of child pornography (and attempt)); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (possession of and access with intent to view child pornography (and attempt)) are presently located within the **TARGET DEVICE**.

## DEFINITIONS

4.      The following definitions apply to this Affidavit and Attachment B:

a.      "Child erotica," as used herein, means materials or items that are sexually
arousing to persons having a sexual interest in minors but that are not necessarily
obscene or do not necessarily depict minors in sexually explicit poses or positions.

b.      "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual
depiction of sexually explicit conduct where (a) the production of the visual
depiction involved the use of a minor engaged in sexually explicit conduct, (b) the
visual depiction is a digital image, computer image, or computer-generated image
that is, or is indistinguishable from, that of a minor engaged in sexually explicit
conduct, or (c) the visual depiction has been created, adapted, or modified to
appear that an identifiable minor is engaged in sexually explicit conduct.

c.      "Computer," as used herein, refers to "an electronic, magnetic, optical,
electrochemical, or other high speed data processing device performing logical or
storage functions, and includes any data storage facility or communications
facility directly related to or operating in conjunction with such device" and
includes smartphones, and mobile phones and devices.    *See* 18 U.S.C.
§ 1030(e)(1).

d.      "Computer hardware," as used herein, consists of all equipment that can
receive, capture, collect, analyze, create, display, convert, store, conceal, or
transmit electronic, magnetic, or similar computer impulses or data. Computer
hardware includes any data-processing devices (including central processing

3

units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

e.    The "Internet" is a global network of computers and other electronic devices that communicate with each other.    Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

f.    "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet.    IP addresses can be "dynamic," meaning that the internet service provider assigns a different unique number to a computer every time it accesses the Internet.    IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

g.    "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h.    "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

i.    "Records," "documents," and "materials," as used herein, include all information recorded in any form and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

j.    "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

k.    "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## BACKGROUND OF THE INVESTIGATION

5.    Around September 2023, during the course of a separate investigation, FBI Special Agents identified a Session user with the unique Session ID "05485744d4e190ac54c29447dc8cc46903f44bbb4256aa0cbcdcc1e6ecfe5f672c," bearing the screen name "Zoídberg" (hereinafter, "Zoidberg"), who was sharing numerous child sexual abuse material ("CSAM") files with the subject of the other investigation via the instant

messaging application, Session.[1]

6.    On or about November 8, 2023, Online Covert Employee 10852 ("OCE") logged onto the Internet in an undercover capacity on Session. While on Session, OCE sent a message to Session user Zoidberg, saying "Hey." Zoidberg accepted the OCE message request, saying "Hello (with a wave emoji)." The messaging continued between the OCE and Zoidberg.

7.    On November 21, 2023, Zoidberg stated, "I work nights lol."

8.    On November 28, 2023, at approximately 11:06 a.m., Zoidberg sent the OCE two GIFS of CSAM described below:

9.    The first GIF depicted an adult inserting a purple object into the anus of a naked female child, who appeared to be under the age of four. The child's face is seen grimacing while the adult is inserting the purple object. The adult is holding up the legs of the child with the adult's right arm, exposing the child's vagina and anus, while inserting the object into the child's vagina with the adult's left hand.

10.    The second GIF depicted an adult male inserting his penis into the anus of a naked female child, who appeared to be under the age of four. The adult is holding up the legs of the child with his right arm, while inserting his penis into the child's anus with his left hand.

11.    Session is an end-to-end encrypted application, and, therefore, subscriber information or content cannot be obtained from Session. As a result, on December 1, 2023, in an effort to obtain information that might reveal Zoidberg's true identity and location, the OCE

---

[1] Session is an end-to-end encrypted messaging application. As stated on getsession.org, "Session is an end-to-end encrypted messenger that minimizes sensitive metadata, designed and built for people who want absolute privacy and freedom from any form of surveillance."

sent Zoidberg what appeared to be a publicly available Internet Uniform Resource Locator ("URL") that contained an IP-grabber.[2] The OCE used a publicly-available IP-grabber service from the open Internet to create the link shared with Zoidberg during their communications. As other IP-grabber users often do, the OCE masked the IP-grabber link used with Zoidberg to appear as a publicly available Internet site and provided Zoidberg with the indicated public site's content.

12. After the OCE shared the masked URL with Zoidberg, records from the IP-grabber indicated the link was accessed on December 1, 2023 at 2:41 p.m. from IP Address 24.139.39.119, noted as Lawton, Oklahoma, United States, via a FIDN IP, from an Android 10 device.

13. The Session chats continued between Zoidberg and the OCE. On December 5, 2023, the OCE stated to Zoidberg, "Wish I had one of my own," referencing a child with whom he could perform sexual acts. To which Zoidberg replied, "same." When the OCE asked Zoidberg, "ever been with one," Zoidberg replied, "Youngest was 13 when I was 17."

14. On December 6, 2023, after the OCE explained the OCE hoped, "to catch some alone time" with the OCE's 6-year-old niece over Christmas, Zoidberg instructed, "Mmm if you do have some alone time you will have to get some pics of her little butthole for me [...] I

---

[2] As background, when computers communicate over the Internet, each computer uses a public Internet Protocol Address ("IP Address") to identify it and enable it to exchange data with other computers. The IP- grabber website used is a website that reveals to the link's sender the public IP Address of a recipient when the recipient clicks on the link. The link routes the recipient's Internet traffic through the grabber's site while sending or receiving the requested data, which necessarily means the recipient's computer voluntarily shares its public IP Address with the grabber when requesting the URL. A common use for the particular IP- grabber used, and similar publicly available tracking websites, is for businesses and Internet analysts to review traffic to websites and referring pages to build their businesses.

absolutely love little buttholes." The OCE then asked, "how little," and Zoidberg replied, "2-10."

15.     The next morning, on December 7, 2023, Zoidberg sent the OCE a CSAM photo of a prepubescent female, who was naked from the waist down and wearing a blue shirt. The minor female was lying on her back, holding both of her legs from behind her knees in a straddling position, exposing her vagina and anus. Zoidberg then stated, "My favorite pic," and explained, "Nah I found that on the darkweb." Zoidberg went on to say he knows, "which forums a good to use," in regard to the dark web. He went further saying, "Okay I will send you the link to the open forum when I get off in the morning [...] the invite only one will be hard to join if you have nothing to contribute [...] If you get something fun with your niece you will be able to join easily." On December 8, 2023, Zoidberg sent the OCE a dark web link, which directed the OCE to the login page of a forum called, "Naughty Kids," where individuals post CSAM. The OCE also asked Zoidberg how old he was, and he answered, "34."

16.     Law enforcement determined that the IP address belonged to Fidelity Communications. Agents issued a subpoena to Fidelity Communications for user information regarding the account associated with the IP address 24.139.39.119. The results from Fidelity Communications identified that IP address of 24.139.39.119 was being utilized from November 8, 2023 to December 6, 2023, resolved to the account of **CHRISTOPHER BUXTON** ("**BUXTON**"), who listed his address as 1401 SW B Avenue, Apartment 411, Lawton, Oklahoma 73501 (the "SUBJECT PREMISES") and his phone number as 254-368-3021.

17.     Subsequent investigation revealed that **BUXTON** had an active lease agreement with Sky Apartments for the apartment located at 1401 SW B Avenue, Apartment 411, Lawton,

Oklahoma 73501.  According to the lease agreement, **BUXTON** was the only resident residing in that unit.  Law enforcement thus identified **BUXTON** as the suspect for using the Zoidberg account to distribute child pornography to the OCE.

18.      Using publicly available databases, FBI Agents determined **BUXTON**'s place of employment was the Fort Sill Apache Casino and Hotel, which is located at 2315 Gore Boulevard, Lawton, Oklahoma 73501.

19.      On April 2, 2024, I conducted physical surveillance on **BUXTON**.  He was observed entering his vehicle at the Fort Sill Apache Casino and Hotel, and he next drove to the SUBJECT PREMISES.  Upon arrival, he was observed walking from Building 4 of the apartment complex, while carrying two-to-three black trash bags, to the public dumpster that is located in the parking lot of Buildings 1 and 4.

20.      I made contact with the City of Lawton Solid Waste Collection truck crew that was emptying dumpsters in the complex.  Just prior to **BUXTON** placing his trash in the dumpster, the crew had emptied the dumpster.  As a result, **BUXTON**'s bags were the only trash bags in the dumpster.  The crew also observed **BUXTON** throwing his trash into that dumpster.  At my request, the City of Lawton Solid Waste Collection truck crew collected three trash bags from the dumpster in the parking lot of Buildings 1 and 4 and placed them in my trunk.

21.      Numerous items were located within **BUXTON**'s trash that connect **BUXTON** to the SUBJECT PREMISES to include healthcare paperwork, insurance details, and financial documents.

22.      Upon execution of a search warrant at the SUBJECT PREMESIS on April 30,

9

2024, **BUXTON** was interviewed by agents. Prior to the interview, **BUXTON** provided agents with the **TARGET DEVICE**. During the interview, **BUXTON** admitted to agents he possessed and distributed child pornography. **BUXTON** also admitted that he would instruct other users to produce child pornography to share with him.

23.    The **TARGET DEVICE** is currently located in secure evidence storage at the FBI Oklahoma City Division. Based on my training and experience, I know that the **TARGET DEVICE** has been stored in a manner in which its contents are—to the extent material to this investigation—in substantially the same state as it was when the **TARGET DEVICE** first came into the possession of the FBI.

24.    Based on my training, experience, and research, I know that the **TARGET DEVICE** has capabilities that allows it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and personal digital assistant ("PDA"). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

25.    An examination can reveal the approximate location of the **TARGET DEVICE** and the user by associating a specific date and time with: historical GPS data, historical cell-site data, and logs of Wi-Fi networks. Additionally, an examination can reveal the **TARGET DEVICE** unique identifiers (phone number, IMEI, IMSI, etc.). These unique identifiers can be used to compel material records from the cell phone service provider such as call logs, billing information, and historical cell-site data.

## BACKGROUND ON CHILD PORNOGRAPHY,
## COMPUTERS, AND THE INTERNET

26.    I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

27.    Computers and digital technology are the primary way in which individuals interested in child pornography interact with each other.    Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

28.    Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer with a cable or via wireless connections, such as "Wi-Fi" or "Bluetooth." Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone.  These memory cards are often large enough to store thousands of high-resolution photographs or videos.

29.    A device known as a modem allows any computer to connect to another computer using a telephone, cable, or wireless connection.  Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections.  Electronic contact can be made to literally millions of computers around the world.  Child pornography can therefore be easily, inexpensively, and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone.

30.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.    Electronic storage media of various types—to

11

include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices plugged into a port on the computer – can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also often carried on an individual's person.

31.    The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

32.    Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone, or external media in most cases.

33.    As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional (*i.e.*, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files).   Digital information can also be retained unintentionally, such as the traces of the path of an electronic communication, which

may be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

35.     I assert there is probable cause to believe that things that were once stored on the **TARGET DEVICE** may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently

13

being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

36.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICE** was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE** because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their uses, who used them, and when.

14

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

37. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

38. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for this Court to authorize the execution of the warrant at any time in the day or night.

## **CONCLUSION**

39.    I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICE** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Steven Carrick
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on May _13th_, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

The property to be searched is described as: an **Omen laptop, serial number CND3171HXY** seized from **CHRISTOPHER BUXTON** (the "TARGET DEVICE"). The **TARGET DEVICE** is currently located in secure evidence storage at the FBI in Oklahoma City, located at 3301 W Memorial Road, Oklahoma City, Oklahoma. This warrant authorizes the forensic examination of the **TARGET DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

17

## ATTACHMENT B

1.      All records on the **TARGET DEVICE** described in Attachment A that relate

to violations of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (distribution and/or receipt of a visual

depiction of a minor engaged in sexually explicit conduct); 18 U.S.C. §§ 2252(a)(4)(B)

and (b)(2) (possession of and access with intent to view a visual depiction of a minor

engaged in sexually explicit conduct); 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (distribution

and/or receipt of child pornography (and attempt)); and 18 U.S.C. § 2252A(a)(5)(B) and

(b)(2) (possession of and access with intent to view child pornography (and attempt)),

involving **CHRISTOPHER BUXTON**, including:

      a. Evidence of who used, owned, or controlled the **TARGET DEVICE** at the

          time the things described in this warrant were created, edited, or deleted, such

          as logs, registry entries, configuration files, saved usernames and passwords,

          documents, browsing history, user profiles, email, email contacts, "chat,"

          instant messaging logs, photographs, and correspondence;

      b. Evidence of software that would allow others to control the **TARGET**

          **DEVICE**, such as viruses, Trojan horses, and other forms of malicious

          software, as well as evidence of the presence or absence of security software

          designed to detect malicious software;

      c. Evidence of the lack of such malicious software;

      d. Evidence indicating how and when the computer was accessed or used to

          determine the chronological context of computer access, use, and events

          relating to the crime(s) under investigation and to the computer user;

e. Evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

f. Evidence of the attachment to the **TARGET DEVICE** of other storage devices or similar containers for electronic evidence;

g. Evidence of programs (and associated data) that are designed to eliminate data from the **TARGET DEVICE**;

h. Evidence of the times the **TARGET DEVICE** was used;

i. Passwords, encryption keys, and other access devices that may be necessary to access the **TARGET DEVICE**;

j. Documentation and manuals that may be necessary to access the **TARGET DEVICE** or to conduct a forensic examination of the **TARGET DEVICE**;

k. Records of or information about Internet Protocol addresses used by the **TARGET DEVICE**;

l. Records of or information about the **TARGET DEVICE's** Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or

2

stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic, video, or audio form.